**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

NOV 2 3 2021

TAMMY H. DOWNS, CLERK
By:_____
                    DEP CLERK

**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
~~JONESBORO~~ DIVISION**
*Northern*

| | |
|---|---|
| ALISHA SMITHSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| GLAXOSMITHKLINE LLC, | ) |
| | ) |
| Defendant. | ) |

Civil Action No. 3:21-cv- 243 -JM

Judge

This case assigned to District Judge _Moody_
and to Magistrate Judge _Volpe_

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant GlaxoSmithKline LLC ("GSK") hereby removes this action from the Circuit Court of Sharp County, Arkansas, to the United States District Court for the Eastern District of Arkansas. In support of this Notice, GSK states as follows:

1.     On or about October 12, 2021, Plaintiff filed a Complaint in the Circuit Court of Sharp County, Arkansas, in the civil action styled *Smithson v. GlaxoSmithKline LLC*, No. 68CV-21-114. Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of all process and pleadings served on GSK is attached hereto as Exhibit "A," which is incorporated herein by reference.

2.     The Complaint asserts claims for common law negligence and injunctive relief predicated on Plaintiff Alisha Smithson's alleged use of Flonase, an FDA-approved drug manufactured by GSK. Plaintiff contends she "has and will suffer from injuries, including, but not limited to, retinal detachment, cataracts, weak ocular muscles, loss of vision, deformity, and other eye injuries" as a result of her use of Flonase. Compl., ¶ 30. She seeks actual damages, attorney's fees, and punitive damages. *Id*. at p. 10, Prayer for Relief.

3.     As explained below, this Court has original subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332, in that removal is timely, there is complete diversity of citizenship between Plaintiff and Defendant, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

## I.     THE NOTICE OF REMOVAL IS TIMELY

4.     This removal is timely. GSK files this Notice of Removal within 30 days of October 25, 2021, the date of service of the Summons and Complaint upon GSK, as required by 28 U.S.C. § 1446(b).

## II.     VENUE IS PROPER IN THE EASTERN DISTRICT OF ARKANSAS

5.     The United States District Court for the Eastern District of Arkansas, Jonesboro Division is the proper venue for removal under 28 U.S.C. § 1441(a) because the Eastern District of Arkansas, Jonesboro Division encompasses Sharp County, Arkansas, the forum where this suit was initiated. *See* 28 U.S.C. § 89(c).

## III.     REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT-MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441

6.     This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because (i) there is complete diversity between Plaintiff and GSK; and (ii) the amount in controversy exceeds $75,000, exclusive of interests and costs.

### A.     Diversity of Citizenship Exists Between the Parties.

7.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different states. Removal under 28 U.S.C. § 1441(b) is appropriate in this matter because complete diversity of citizenship exists between Plaintiff and GSK, and GSK is not a citizen of Arkansas, the state in which this action was brought.

2

8.      Plaintiff Alisha Smithson is a resident of Sharp County, Arkansas. (Compl. ¶ 2).

9.      GSK is, and was at the commencement of this action, a citizen of the State of Delaware for purposes of diversity jurisdiction. GSK is a limited liability company. For purposes of diversity jurisdiction, the citizenship of a limited liability company ("LLC") is that of its members. *GMAC Commercial Credit LLC v. Dillard Dept. Stores, Inc.*, 357 F.3d 827, 829 (8th Cir. 2004). The sole member of GSK is GlaxoSmithKline Holdings (Americas) Inc. ("GSK Holdings"). Under the Supreme Court's ruling in *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81 (2010), a corporation is a citizen of the state in which it is incorporated and the state in which it has its principal place of business, as determined by the "nerve center" test. Under this two-part analysis, because Delaware is both GSK Holdings' state of incorporation and the location of its principal place of business, GSK Holdings is solely a citizen of Delaware. Therefore, GSK also is solely a Delaware citizen. *See Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 356–57, 360 (3d Cir. 2013).

**B**.      **The Amount-In-Controversy Requirement Is Satisfied.**

10.     The party seeking removal must only show by a preponderance of the evidence that the amount in controversy exceeds the $75,000 threshold. *In re Minn. Mut. Life Ins. Co. Sales Practices Litig.*, 346 F.3d 830, 834 (8th Cir. 2003) ("Where, as here, the complaint alleges no specific amount of damages or an amount under the jurisdictional minimum, the removing party . . . must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000."); *Motal v. Allstate Prop. & Cas. Ins. Co.*, No. 4:20-cv-01011, 2021 WL 2173860, at *1 (E.D. Ark. Feb. 24, 2021). Once the proponent of federal jurisdiction makes this showing, federal jurisdiction will be proper unless "the plaintiff can establish to a legal certainty that the claim is for less than the requisite amount." *Neighbors v. Shelter Mut. Ins. Co.*, No. 2:18-CV-00081 KGB,

2018 WL 10160962, at *2 (E.D. Ark. Sept. 5, 2018) (citations omitted); *Raskas v. Johnson & Johnson*, 719 F.3d 884, 888 (8th Cir. 2013) ("Even if it is highly improbable that the Plaintiffs will recover the amounts Defendants have put into controversy, this does not meet the legally impossible standard."). In making this inquiry, the Court may look outside the pleadings to other evidence of the jurisdictional amount in the record at the time of removal, including relevant jury verdicts. *See Neighbors*, 2018 WL 10160962, at *4 ("If the pleadings alone are inconclusive to determine the amount in controversy, courts may look to other evidence in the record to determine whether the amount in controversy is met."); *Rodgers v. Wolfe*, No. 4:05CV01600ERW, 2006 WL 335716, at *3 (E.D. Mo. Feb. 14, 2006) (concluding that the amount in controversy was met following review of relevant jury verdicts); *Motal*, 2021 WL 2173860, at *1 ("Damage awards from similar causes of action may be considered.").

11.     A plaintiff may not avoid removal to federal court by simply remaining silent as to the specific amount in controversy. Instead, when the Complaint does not demand a specific amount of monetary relief, removal is still proper if the amount in controversy more likely than not exceeds $75,000. *See Gilmer v. Walt Disney Co.*, 915 F. Supp. 1001, 1007 (W.D. Ark. 1996) ("Accordingly we hold that in diversity cases in which the state court complaint does not specify the amount of damages sought, the removing defendant's burden is to establish by a preponderance of the evidence that the amount in controversy is greater than [the jurisdictional threshold].").

12.     Although Plaintiff seeks an unspecified amount of damages, it is facially apparent based on Plaintiff's allegations that the amount in controversy exceeds $75,000.00, exclusive of interests and costs. Plaintiff alleges serious permanent personal injuries, including "retinal detachment, cataracts, weak ocular muscles, loss of vision, deformity, and other eye injuries." (Compl. ¶ 30; *see also* Compl. ¶ 40). She allegedly underwent four separate eye surgeries as a

result of her Flonase use. *Id.* ¶¶ 12, 19, 23, 25. She alleges that she had "perfect 20/20 vision" before using Flonase and that after using Flonase, she "could not correctly identify the largest letter of a standard medical eye-chart." *Id.* ¶¶ 9, 27.

13.     Plaintiff further alleges that she "has suffered past, present and future physical injury, anxiety, emotional distress and mental anguish, loss of enjoyment of life, monetary damages, including past and future medical bills, and increased and immediate risk of future harm." (Compl. ¶ 30). Plaintiff also alleges she "suffered other economic and non-economic losses, including loss of unemployment assistance for an extended period of time while they [sic] were [sic] and are [sic] unable to work due to their [sic] injuries." (Compl. ¶ 41).

14.     In product liability cases, juries in Arkansas have routinely awarded plaintiffs in excess of $75,000, exclusive of interests and costs, in cases involving permanent physical injury:

- *Wesby v. Globe Manuf. Co. L.L.C., Casco Indus., Inc.*, No. 3:16cv00235, 2019 WL 8887991 (E.D. Ark. Apr. 12, 2019) (verdict of $1,500,000 for third degree burns and scarring to back, shoulders, and arms, and psychological injuries).

- *Prince v. S. Snow Manuf. Inc.*, No. 4:14cv00031, 2016 WL 8118790 (E.D. Ark. Nov. 16, 2016) (verdict of $150,000 for partial amputation of three fingers).

- *Polston v. Ford Motor Co.*, No. 3:08-cv-00306-DPM, 2010 WL 6774051 (E.D. Ark. Oct. 15, 2010) (verdict for $19,000,000 for tetraplegia injuries).

- *Bohannon v. Johnson Food Equip. Inc.*, No. 5:07-cv-00123, 2009 WL 4878205 (E.D. Ark. Apr. 2009) (verdict of $4,500,000 for amputation of thumb, partial hand amputation, and post-traumatic stress disorder).

- *Scroggin v. Wyeth Pharm.*, No. 04-1169, 2008 WL 2128168 (E.D. Ark. Feb. 2008) (verdict of $29,750,000 for breast cancer injuries, including punitive damages).

- *Barnett v. GX Marketing, Inc., SK Labs.*, No. 4-03-CV-00482JMMM, 2001 WL 36161832 (E.D. Ark. Aug. 2001) (settlement of $375,000 for mild brain injury, temporary memory loss, and a seizure).

- *Hall, Pro Ami v. E-Ton Dynamics Indus. Corp.*, No. CA-02-1311, 2003 WL 24903923 (Greene Cnty. Ark. Sept. 2003) (verdict of $200,000 for amputation of two toes).[1]

15.     Verdicts and settlements in product liability cases alleging vision loss likewise routinely exceed $75,000:

- *Bowman v. Leer, Inc.*, No. CV95-15285, 1996 WL 333405018 (Mo. Cir. Ct. Sept. 23, 1996) ($425,000 settlement as a result of vision loss in one eye allegedly as a result of a defective design of a pickup truck cap).

- *West v. Milwaukee Elec. Tool Corp.*, No. 892-05566, 1992 WL 12005713 (Mo. Cir. Ct. Dec. 4, 1992) ($350,000 verdict for plaintiff alleging vision loss in left eye allegedly caused by defective design of Allen wrench holder).

- *Bailes v. Toro Co.*, No. 84-12434, 1988 WL 509079 (Min. St. Ct. 1988) ($2.3 million verdict for plaintiff who lost vision in one eye when it was struck by a stone thrown by a power mower).

- *Crist v. Quaker Oats Co.*, No. C85-85, 1987 WL 230394 (Iowa Feb. 1987) ($110,000 verdict for plaintiff who suffered eye laceration from an allegedly defective toy, no vision loss, but alleged she would probably require a cataract surgery in the future).

- *Woodford v. Gen. Motors*, No. CV-83-7527, 1985 WL 352114 (Mo. July 1985) ($500,000 verdict for plaintiff who suffered loss of vision in one eye and lacerations of the other eye allegedly because of an exploding battery).

- *Foster v. Remington Arms Co.*, No. 342 p. 77, 1983 WL 248295 (Neb. Dist. Ct. Sep. 1983) ($302,000 verdict for plaintiff who suffered 90% vision loss in one eye when a clay skeet target exploded).[2]

16.     Consistent with the fact that juries in product liability, personal injury cases routinely render verdicts in excess of $75,000, numerous courts have held that claims for serious personal injuries satisfy the amount-in-controversy requirement. *See, e.g., Haynes v. Louisville Ladder Group, LLC*, 342 F. Supp. 2d 1064, 1068-69 (E.D. Ark. 2004) (holding that amount in

---

[1] Copies of each verdict and settlement in product liability cases involving permanent physical injury are attached as Composite Exhibit B.

[2] Copies of each verdict and settlement involving allegations of vision loss are attached as Composite Exhibit C.

controversy satisfied where plaintiff seeks to recover, *inter alia*, damages for permanent physical injuries; past and future medical expenses; past and future pain, suffering, and mental anguish; and the value of any earnings, salary, working time lost); *Quinn v. Kimble*, 228 F. Supp. 2d 1038 (E.D. Mo. 2002) (holding the amount in controversy requirement satisfied where plaintiff sought compensation for past and future medical expenses, lost wages, and damages for loss of enjoyment of life); *In re Rezulin Prods. Liab. Litig.*, 133 F.Supp.2d 272, 296 (S.D.N.Y. 2001) (holding amount-in-controversy requirement satisfied in pharmaceutical products liability litigation alleging economic loss, medical and health expenses, and serious medical conditions where "the complaint . . . does not preclude recovery in excess of $75,000"). *Gebbia v. Wal-Mart Stores,* 233 F.3d 880, 888 (5th Cir. 2000) (alleged damages for "medical expenses, physical pain and suffering, mental anguish and suffering, loss of enjoyment of life, loss of wages and earning capacity, and permanent disability and disfigurement" met the jurisdictional amount); *George v. Home Depot USA, Inc.*, No. Civ.A 00-0006, 2000 WL 275804, at *2 (E.D. La. Mar. 10, 2000) (concluding "it is facially apparent that the amount in controversy more likely than not exceeds $75,000" where plaintiff alleged serious personal injuries).[3]

17.    Plaintiff also seeks punitive damages, which are to be considered in determining the amount in controversy. *Allison v. Security Benefit Life Ins. Co.*, 980 F.2d 1213, 1215 (8th Cir. 1992) ("Punitive damages are included in determining the amount in controversy.").

18.    Based on the nature of the alleged injuries, the alleged claims, the alleged entitlement to recover compensatory damages for economic and non-economic losses and punitive

---

[3] *See also King v. Pfizer, Inc.*, No. 8:13cv290, 2013 WL 6905305, at *3 (D. Neb. Nov. 26, 2013) (finding amount-in-controversy requirement was met where complaint did not specify damages, but similar injuries as those alleged had exceeded $75,000 in damages in other cases); *Butzberger by and through Butzberger v. Novartis Pharm. Corp.*, No. 06-80700, 2006 WL 8443453, at *3 (S.D. Fla. Nov. 27, 2006) ("Indeed, federal jurisdiction exists where plaintiffs allege personal injuries caused by prescription medications, even where, as here, they do not expressly provide an amount in controversy.").

7

damages, and jury verdicts in Arkansas and across the country, it is apparent from the face of the Complaint that Plaintiff seeks recovery in excess of $75,000, exclusive of interest and costs. The amount in controversy therefore exceeds the threshold for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

**IV.**     **Filing of Removal Papers**

19.     Pursuant to 28 U.S.C. § 1446(d), GSK will promptly file a copy of this Notice of Removal with the Circuit Court of Sharp County, Arkansas, and will serve a copy of the same upon counsel for the Plaintiff. By filing this Notice of Removal, GSK does not waive any jurisdictional or other defenses that might be available to it.

20.     GSK reserves the right to amend or supplement this Notice of Removal.

WHEREFORE, GSK hereby removes this action from the Circuit Court of Sharp County, Arkansas to the United States District Court for the Eastern District of Arkansas, Jonesboro Division, pursuant to 28 U.S.C. §§ 1441 and 1446, and states that no further proceedings may be had in the state action.

November 23, 2021

Respectfully submitted,

*Britta Todd*

Britta N. Todd
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Phone: (816) 559-2064
Fax: (816) 421-5547
btodd@shb.com

*Attorney for Defendant*
GLAXOSMITHKLINE LLC

8

**<u>CERTIFICATE OF SERVICE</u>**

I, Britta N. Todd, hereby certify that, on November 23, 2021 I served DEFENDANT'S

NOTICE OF REMOVAL by certified mail, return receipt requested, to:

Jody L. Shackleford
Legal Oak Law Firm, PLLC
2423-D Highway 62/412
Hardy, AR 72542

*/s/ Britta N. Todd*
*Attorney for Defendant*
GLAXOSMITHKLINE LLC

9

# Exhibit A

**FILED**

OCT 12 2021

IN THE CIRCUIT COURT OF SHARP COUNTY, ARKANSAS

BY ~~ALISA BLACK, CLERK~~ D.C

3RD JUDICIAL CIRCUIT

CIVIL DIVISION

ALISHA SMITHSON                                                                 PLAINTIFF,

v.                                        Case No: 6XCV- 21- 114

GLAXOSMITHKLINE LLC,                                                    DEFENDANT.

**JURY TRIAL DEMANDED**

**<u>COMPLAINT AT LAW</u>**

Comes now, Plaintiff Alisha Smithson ("Mrs. Smithson"), by and through her

attorney Jody L. Shackelford, and for their Complaint against Defendant

GLAXOSMITHKLINE LLC., ("GSK/Defendant"), Mrs. Smithson alleges with personal

knowledge with respect to herself individually and on information and belief derived

from, among other things, investigation of counsel and review of public documents as to

all other matters, states:

**I. Jurisdiction, Venue and Parties**

1.      That this Court has jurisdiction over this matter under Ark. Code §

16-13-201 and Venue lies in this Court pursuant to Ark. Code Ann. § 16-60-101 as a

substantial part of the events or omissions that form the basis of this Complaint

occurred in Sharp County, Arkansas; Defendant conducted activity that gave rise to the

claims for relief in this County and in all circumstances has minimum contacts within

this venue.

2.      That Mrs. Smithson is a resident of Sharp County, Arkansas.

3.      Defendant is now, and has been at all relevant times a foreign company

organized under the laws of the state of Delaware, authorized to do business in

1

Arkansas, and doing business in the State of Arkansas. Defendant's principal place of

business is at One Franklin Plaza, 200 N. 16th Street, Philadelphia, Pennsylvania,

19102. Defendant engages in business in Arkansas by developing, manufacturing,

promoting, selling and distributing prescription drugs. Defendant's registered agent in

the State of Arkansas is CORPORATION SERVICE COMPANY, 300 SPRING

BUILDING, SUITE 900, 300 S. SPRING STREET LITTLE ROCK, AR 72201.

## II.    INTRODUCTION

4.    Fluticasone propionate was patented in 1980, and approved for medical

use in 1990.

5.    Fluticasone propionate, sold under the brand names Flovent and Flonase,

the ("drug") at issue, among others, is a steroid medication. When inhaled it is used for

the long term management of asthma and COPD. In the nose, it is used for hay fever and

nasal polyps. It can also be used for mouth ulcers. According to the Defendant's website,

"FLONASE relieves nasal congestion, sneezing, runny nose, itchy nose, itchy eyes and

watery eyes."

6.    Defendant failed to warn Mrs. Smithson of the danger of retinal

detachment or harm to the retinal nerve as a possible side-effect of using the drug, nor

did Defendant warn her physician(s); the label did not warn of the danger of retinal

detachment; the marketing did not warn users of this risk, nor did the Defendant

uphold their duty to act in a reasonable manner in regard to this risk.

7.    While the FDA may approve a drug, the manufacturer is still in the best

position to decide which patient protections are appropriate, and Defendant failed to do

so, resulting in Mrs. Smithson using the product to their detriment.

### III. Background Facts

8.     Mrs. Smithson began using Flonase for her allergies around 2013.

9.     She had perfect 20/20 vision at that time.

10.    On or about August 17, 2015 Mrs. Smithson started to notice an issue with the vision in her left eye.

11.    Mrs. Smithson describes the issue as colored contact in the nasal corner of her left eye, "every time I looked to the left it looked like a contact sliding around," she said.

12.    August 25, 2015, Mrs. Smithson was referred for surgery at Baptist Health in Little Rock with Dr. Steven Davis.

13.    Mrs. Smithson had lost color vision in her left eye by the time of the surgery on August 25, 2015.

14.    Over the next year Mrs. Smithson had to be seen 1 week after surgery, and every month for the next year and then seen every 6 months after that.

15.    During the first year after Mrs. Smithson's surgery she had to undergo Laser Tack Weld surgery to strengthen weak spots in her eyes that could have caused another detachment if not addressed; this was another thing that the eye doctors could not explain because Mrs. Smithson was so young, had no trauma, and no family history of retina issues.

16.    After that, Mrs. Smithson's left eye was not back to normal. "I had lost a lot of depth perception in that eye and also there was still a pucker in the back of my left eye from where the retina did not lay back down as smooth as it had once been. This caused there to be waves in my vision. I cannot see things as clear as I once did. After

3

surgery I needed a prescription for my left eye in order to see better out of it," Mrs. Smithson said.

17.    In addition to retinal detachment, by 2018, Mrs. Smithson was diagnosed with cataracts in both eyes.

18.    She continued to take Flonase and did not know there was a connection between the drug and her eye-sight at that time.

19.    Mrs. Smithson was advised to see a cataract specialist ASAP and was set up with an appointment with Dr. Melanie Smith also of the Arkansas Retina Clinic in late 2019.

STEPHEN K. MAGIE, M.D.
MELANIE F. SMITH, M.D.
JUSTIN W. CHARTON, M.D.



JEFFREY J. STRESSNER, O.D.
B. SCOTT KOONTZ, O.D.

To Whom it May Concern:

Ms. Alisha Smithson presented in clinic on October 9, 2019 with cataracts and borderline intraocular pressure bilaterally. She was instructed to stop Flonase use, as it's use can be related to early cataracts and glaucoma. She underwent successful cataract surgery in her left eye on December 3, 2019, and in the right eye on December 1, 2020. Her vision on last exam was 20/20 without correction bilaterally.

Ms. Smithson underwent a glaucoma work-up after surgery and was determined to be a glaucoma suspect. She is currently being treated with prescription drops in her left eye. I will see her again in July for continued testing and treatment as indicated.

Please let me know if I can be any further assistance.

Sincerely,

Melanie Smith

Melanie F Smith, M.D.

*Letter of Confirmation by Doctor Melanie F. Smith M.D.*

4

20.     Dr. Smith asked Mrs. Smithson if she had been on a large dose of steroids recently and Mrs. Smithson stated that she had not, but Dr. Smith then pointed out that Mrs. Smithson was using Flonase.

21.     Dr. Smith advised Mrs. Smithson that she stop taking this ASAP as it was known to cause cataracts because it is a steroid and prolonged usage of it can cause cataracts.

22.     To Mrs. Smithson, this was an unknown risk and/or side-effect, and she stopped taking it on that day and has never used it again.

23.     In December 2019 Mrs. Smithson underwent another cataract surgery at Conway Regional for her left eye. She could see better for one-week, but was again met with devastation.

24.     During the cataract surgery scar tissue from her retina surgery broke off and settled on her macula causing her to lose the vision in her left eye again.

25.     She was then seen by a retina specialist, Dr. Mabrey, who tried to treat it for a few weeks with eye drops but soon realized that she was going to need surgery again.

26.     Her right eye was monitored from February 2020 to November 2020 and her once strong dominant Right eye became her weak eye, while her left eye with all the issues had to become her dominant eye.

27.     By the end of 2020, Mrs. Smithson could not correctly identify the largest letter of a standard medical eye-chart.

28.     As of the filing of this complaint, Mrs. Smithson continues to suffer from the effects of Defendant's dangerous product and lack of warning regarding the undisclosed dangers of their Flonase product.

5

29.    Mrs. Smithson in no way contributed to their damages.

## DAMAGES

30.    As a direct and proximate result of Defendant's conduct, Mrs. Smithson has and will suffer from injuries, including, but not limited to, retinal detachment, cataracts, weak ocular muscles, loss of vision, deformity, and other eye injuries.

31.    Further, As a direct and proximate result of Defendant's actions and inactions, Mrs. Smithson has suffered past, present and future physical injury, anxiety, emotional distress and mental anguish, loss of enjoyment of life, monetary damages, including past and future medical bills, and increased and immediate risk of future harm.

## COUNT I
### Common Law Negligence

32.    Mrs. Smithson repeats and reallege the allegations of paragraphs 1-31 with the same force and effect as though fully set forth herein.

33.    Defendant's actions and inactions were of the type that would result in foreseeable, unreasonable risk of harm to Mrs. Smithson. Defendant knew, or should have known, of the risks inherent in selling, marketing, and distributing Flonase without proper warnings of the dangers faced by Mrs. Smithson, and the importance of adequate warnings, and safety testing.

34.    Upon knowledge and belief, Defendants knew of the dangers their product posed to Mrs. Smithson, but failed to act in a reasonable manner to warn, protect, and otherwise shield Mrs. Smithson from the harm they suffered due to Defendant's negligence.

6

35.     Defendant had a common law duty to prevent foreseeable harm to those who would use their product. This duty existed because Mrs. Smithson were the foreseeable and probable victims of the failure of Defendant to adopt, implement, and maintain reasonable warnings and safety measures so that Mrs. Smithson' health, eye-sight, and other anatomical parts of the body would be free from harm.

36.     Defendants had a common law duty to warn physicians, pharmacies, and other distributors of their product of the dangers listed in this complaint and failed to do so; there are complaints of similar issues, which goes to actual knowledge on behalf of Defendant's, yet no warning was offered to consumers. Examples of other public complaints showing Defendant knew or should have known the effect on the public:



RAPTOR ADVENTURES

October 9, 2019 at 5:10 PM

I had been taking flonase for seasonal allergies about 4-5 months. One day I woke up and my vision was so blurry in my right eye that I could only see shapes and colors. Turns out I have a **retinal** hemorrhage. Is it possible the flonase could have caused this? I have an appointment with a **retina** specialist this week.
Thanks.



*July 27, 2015 at 11:42 AM*

I had retinal detachment two years ago, and have had four re-attachment surgeries since. Before the last one, I had developed a cataract so badly, that I had to have cataract surgery prior to it. I developed a terrible allergy about eight months ago, finally found Flonase, and used it daily as prescribed, for about three months. By the end of that period, my vision in the same eye had degenerated terribly (I still have silicone oil in it, but the sharpness of the vision faded by the end of my usage of Flonase). Now I feel like the inside of my new lens seems to be coated with the Flonase, so I see very little, so much so that the doctor said he was willing to remove the oil, but he thinks I still will not see anything better. I think the decrease of vision that occurred was due to the Flonase. Have you heard of anything like this? Recommend? Thanks.

Excerpts from https://www.eyedolatryblog.com/2013/03/ocular-side-effects-of-flonase.html

37.     Defendant breached the foregoing duties to exercise reasonable care through their failure to warn Mrs. Smithson, like to many others, of the forgoing dangers of their product; further Defendant breached its duty to exercise reasonable care in the development of the product, in researching the products effects on the retina, eyes, and other anatomical parts of Mrs. Smithson body; Defendant breached their duty to exercise reasonable care in making the product safe for Mrs. Smithson.

38.     Defendants acted with reckless disregard for the safety and health of Mrs. Smithson and Defendants knew or should have known that the foregoing breaches of their duty to Mrs. Smithson would directly lead to the harms and damages they suffered.

39.     As a result of the conduct of Defendants, Mrs. Smithson has suffered and will continue to suffer foreseeable harm.

40.    Mrs. Smithson has suffered actual physical damages including, but not limited to, retinal detachment, cataracts, glaucoma, other eye problems; and increased risk of future harm.

41.    Including those damages listed above, Mrs. Smithson suffered other economic and non-economic losses, including loss of unemployment assistance for an extended period of time while they were and are unable to work due to their injuries.

## COUNT II
### Injunctive Relief

42.    Mrs. Smithson repeats and reallege the allegations of paragraphs 1-41 with the same force and effect as though fully set forth herein.

43.    Defendant's ongoing and continuing wrongful conduct, including its failures to employ reasonably adequate product warnings, and its failures to adequately remedy the effects of the lack of warning and its foregoing injuries; has caused and will continue to cause Mrs. Smithson to suffer irreparable harm.

44.    Such irreparable harm will not cease unless enjoined by the Court.

45.    Mrs. Smithson is entitled to injunctive relief and other affirmative equitable relief requiring Defendant to cease all sales, production and distribution of Flonase.

46    Public Health - If the requested injunction is not issued, upon knowledge and belief, other consumers will suffer and continue to suffer the irreparable injury as set forth above. Upon knowledge and belief, many others are suffering from these harms without knowing Flonase is in fact the cause of their health problems and a public announcement should be made to recall the product, inform the public of these dangers, and this Court should grant an injunction for that reason.

47.     The hardship to the public if the injunction is not to issue will be significant; Defendant ignored the risks inherent in their product, failed to warn Mrs. Smithson, and marketed the product in the face of these risks in the name of profits.

## PRAYER FOR RELIEF

**WHEREFORE**, Mrs. Smithson respectfully request that judgment be entered in her favor and against GLAXOSMITHKLINE LLC, as follows:

A. Entering judgment in favor of Mrs. Smithson against Defendant;

B. Awarding Mrs. Smithson's actual and punitive damages, and all other forms of available relief, as applicable;

C. Awarding Mrs. Smithson attorney's fees and costs, including interest thereon as allowed or required by law;

D. Entering an injunction to mandatorily enjoin Defendant to immediately cease and desist all sales, production, marketing and distribution of Flonase for the public good; and

E. Granting all such further and other relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Mrs. Smithson hereby demands a trial by jury on all claims so triable.

Respectfully submitted,

By: _____

Jody Shackelford, Esq.
**LEGAL OAK LAW FIRM, PLLC.**
Attorney for Plaintiff
Ark. Bar No.: 2019037
2423-D Hwy 62/412
Highland, AR 72542
Phone: 870-955-5035

Fax: (870) 912-0640

## CERTIFICATE OF SERVICE

I, Jody Shackelford do hereby state that I have on this 12th day of October 2021, served this Complaint upon Defendant % their Arkansas registered agent by certified mail, return receipt requested, to:

Reg. Agent        CORPORATION SERVICE COMPANY

Agent Address       300 SPRING BUILDING, SUITE 900
300 S. SPRING STREET
LITTLE ROCK, AR 72201

By: _____
Jody L. Shackelford, Esq.
Attorney at Law
AR Bar #: 2019037
Legal Oak Law Firm, PLLC
2423D, Hwy 62/412
Highland, AR 72542

IN THE CIRCUIT COURT OF SHARP COUNTY, ARKANSAS
CIVIL DIVISION


ALISHA SMITHSON                                                    PLAINTIFF,

v.                                  CASE NO. 68CV·21·114

GLAXOSMITHKLINE LLC                                          DEFENDANT.

## SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

GLAXOSMITHKLINE LLC

300 SPRING BUILDING, SUITE 900
300 S. SPRING STREET
LITTLE ROCK, AR 72201

### A lawsuit has been filed against you.

The relief demanded is stated in the attached complaint for negligence.  Within
30 days after service of this summons on you (not counting the day you received it) — or
60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in
Arkansas — you must file with the clerk of this court a written answer to the complaint
or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose
name and address is:

Jody L. Shackelford, Esq.
Legal Oak Law Firm, PLLC
2423-D Highway 62/412
Hardy, AR 72542
Phone: (870) 955-5035
Fax: (870) 912-0640
Email: Lawyer@JodyLaw.com

If you fail to respond within the applicable time period, judgment by default may be
entered against you for the relief demanded in the complaint.

1

Address of Sharp County Clerk's Office: 718 Ash Flat Drive Ash Flat, AR 72513-9103

_R Crothee D.C._
[Signature of Clerk or Deputy Clerk]

_10·12·2021_
[date] _at 11:56 a.m_

[SEAL]

No. _____ **This summons is for** GLAXOSMITHKLINE LLC.

## PROOF OF SERVICE

☐   On _____ [date] I personally delivered the summons and complaint to the defendant at _____ [place]; or

☐   After making my purpose to deliver the summons and complaint clear, on _____ [date] I left the summons and complaint in the close proximately of the defendant by _____ [describe how the summons and complaint was left] after he/she refused to receive it when I offered it to her/him; or

☐   On _____ [date] I left summons and complaint with _____, a member of defendant;s family at least 18 years of age, at _____ [address], a place where the defendant resides; or

☐   On _____ [date] I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf _____ [name of defendant]; or

☐   On _____ [date] at _____ [address], where the defendant maintains an office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with _____ [name and job description]; or

2

☐      I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I
served the summons and complaint on the defendant by certified mail, return receipt
requested, restricted delivery, as shown by the attached signed return receipt.

☐      I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I
mailed a copy of the summons complaint by first-class mail to the defendant together
with two copies of the notice and acknowledgment and received the attached notice and
acknowledgment form within twenty days after the date of mailing.

☐      Other [specify]: _____

☐      I was unable to execute service because: _____

My fee is $_____.

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____

By: _____

[signature of server]

_____

[printed name]

Address: _____

Phone: _____

Subscribed and sworn to before me this date: _____

Notary Public _____

My Commission Expires: _____

Additional information regarding service or attempted service:

_____

_____

**To be completed if service is by sheriff or deputy sheriff:**

SHERIFF OF _____ COUNTY, ARKANSAS

Date: _____

By: _____
      [Signature of server]


_____
      [Printed name]
Address: _____

Phone: _____

Subscribed and sworn to me before me this date: _____

Notary Public _____

My commission expires: _____

# FACSIMILE

OCT 2 9 2021

ALISA BLACK, CLERK
BY _____ D.C.

## IN THE CIRCUIT COURT OF SHARP COUNTY, ARKANSAS
### CIVIL DIVISION

ALISHA SMITHSON                                    **PLAINTIFF,**

                              *21-114*
v.                  CASE NO. 68-CV-~~114~~

GLAXOSMITHKLINE LLC                                **DEFENDANT.**

### AFFIDAVIT OF SERVICE

STATE OF ARKANSAS      )
                       ) SS.
COUNTY OF SHARP        )

I, Jody L. Shackelford, attorney on record for Plaintiff Alisha Smithson in the matter of Alisha Smithson vs. Glaxosmithkline LLC , state under oath:

1.      The Defendant, Glaxosmithkline LLC, was properly served by Certified Mail, Restricted Delivery at 300 SPRING BUILDING, SUITE 900, 300 S. SPRING STREET LITTLE ROCK, AR 72201 on the 25th day of October, 2021, by U.S. Postal Service Certified Mail 9590 9402 6715 1060 3740 20. The Return Receipt Card is attached for use and referenced herein as Exhibit "A".

Further affiant sayeth not.                  Attorney for Plaintiff,

                                             Jody L. Shackelford
                                             AR Bar No. 2019037
                                             Attorney for Plaintiff
                                             The Legal Oak Law Firm
                                             2423-D Highway 62/412
                                             Hardy, AR 72542
                                             Phone: (870) 955-5035
                                             Fax: (870) 912-0640
                                             Email: Lawyer@JodyLaw.com

Subscribed and sworn to before me on this 29th day of October, 2021.

SEAL



Notary Public

ILLAINA GORDON
Notary Public - Arkansas
Sharp County
Commission # 12716108
My Commission Expires Oct 17, 2031

## EXHIBIT A



| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. | A. Signature |
| ■ Print your name and address on the reverse so that we can return the card to you. | X                                  □ Agent / □ Addressee |
| ■ Attach this card to the back of the mailpiece, or on the front if space permits. | B. Received by (Printed Name)    C. Date of Delivery |
| 1. Article Addressed to: | D. Is delivery address different from item 1?  □ Yes |
| GlaxoSmithKline, LLC 300 Spring Building, STE 300 300 S. Spring Street Little Rock, AR 72201 | If YES, enter delivery address below:  □ No |
| 9590 9402 6715 1060 3740 20 | 3. Service Type |
| 2. Article Number (Transfer from service label) |  |
| PS Form 3811, July 2020 PSN 7530-02-000-9053 | Domestic Return Receipt |

**Report Selection Criteria**

Case ID:        68CV-21-114
Citation No:
Docket Start Date:
Docket Ending Date:

**Case Description**

Case ID:      68CV-21-114 - ALISHA SMITHSON V GLAXOSMITHKLINE INC
Filing Date:  Tuesday  October 12th, 2021
Court:        68 - SHARP
Location:     CI - CIRCUIT
Type:         PL - PRODUCT LIABILITY
Status:       OPEN - CASE OPEN
Images:

**Case Parties**

| Seq # | Assoc | End Date | Type | | ID | Name |
|---|---|---|---|---|---|---|
| 2 | | | PLAINTIFF | | 4417?! | SMITHSON, ALISHA DAWN |
| | | | | Aliases: | | none |
| 3 | | | DEFENDANT | | | GLAXOSMITHKLINE INC |
| | | | | Aliases: | | none |
| 4 | | | PLAINTIFF/PETITIONER ATTORNEY | | 11? ??2 | SHACKELFORD, JODY LEE |
| | | | | Aliases: | | none |
| 1 | | | JUDGE | | ?e : : - | 3RD CIRCUIT DIVISION 1 |
| | | | | Aliases: | | RATTON |

**Milestone Tracks**

*No Milestone Tracks found*

**Docket Entries**

| Filing Date | Description | Name | Monetary |
|---|---|---|---|
| 10/12/2021 11:56 AM | MOF ORIGINAL | | |
| Entry: | none | | |
| Images | No Images | | |
| 10/12/2021 11:56 AM | AOC COVERSHEET CIVIL | | |
| Entry: | none. | | |
| Images | No Images | | |
| 10/12/2021 11:56 AM | COMPLAINT/PETITION FILED | | |
| Entry: | none | | |
| Images | COMPLAINT | | |
| 10/12/2021 11:56 AM | SUMMONS ISSUED | | |
| Entry: | none. | | |
| Images | SUMMONS | | |
| 10/26/2021 10:07 AM | AFFIDAVIT OF SERVICE | | |
| Entry: | none | | |
| Images | AFFIDAVIT | | |

# Exhibit B

Case 3:21-cv-00243-JM   Document 1   Filed 11/23/21   Page 30 of 61

WESBY v. GLOBE MANUFACTURING COMPANY L.L.C.;..., JVR No. 2005210032...

JVR No. 2005210032, 2019 WL 8887991 (E.D.Ark.) (Verdict and Settlement Summary)

Copyright (c) 2019 Thomson Reuters/West
United States District Court, E.D. Arkansas.

# WESBY v. GLOBE MANUFACTURING COMPANY L.L.C.; CASCO INDUSTRIES INC.

3:16CV00235

DATE OF INCIDENT: April 12, 2015
DATE OF FILING: September 12, 2016
DATE OF TRIAL/SETTLEMENT: April 12, 2019

TOPIC:

LIABILITY:

General: Products Liability

Specific: Clothing

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $1,500,000**
**Judge Reduced Award To: $937,500**

**Related Court Documents:**
Plaintiff's amended complaint: 2017 WL 11113123

Defendant Globe's memorandum of law and fact in support of motion in limine: 2019 WL 2077414

Plaintiff's trial brief: 2019 WL 2077418

Verdict form: 2019 WL 2077324

Judgment: 2019 WL 2077348

**EXPERT-WITNESSES:**
Plaintiff:
Chemical Engineer/Fire Cause and Origin: Buc, Elizabeth, Ph.D., P.E., Fire and Materials Research Laboratory L.L.C., Livonia, MI
**ATTORNEY:**
Plaintiff:
T. Michael Morgan, Morgan & Morgan P.A., Orlando, FL
Joshua D. Moore, Morgan & Morgan P.A., Orlando, FL
Keith R. Mitnik, Morgan & Morgan P.A., Orlando, FL
Peter B. Gee Jr., Morgan & Morgan - Memphis L.L.C., Memphis, TN
Paul N. Ford, Ford & Cook P.L.C., Jonesboro, AR
Defendant:

Case 3:21-cv-00243-JM   Document 1   Filed 11/23/21   Page 31 of 61

WESBY v. GLOBE MANUFACTURING COMPANY L.L.C.;..., JVR No. 2005210032...

Kevin D. Bernstein, Spicer Rudstrom P.L.L.C., Memphis, TN
Donald H. Bacon, Friday, Eldredge & Clark L.L.P., Little Rock, AR

JUDGE: D.P. Marshall Jr.

RANGE AMOUNT: $1,000,000 - 1,999,999
STATE: Arkansas
COUNTY: Not Applicable

**PRIMARY INJURY: Burns: Severe: Body**

**SUMMARY**
**PLAINTIFF:**
Sex: M

Age: Adult, 37

General Occupation: Fire Fighter


**DEFENDANT:**
Sex: O

Organization Type: Globe Manufacturing Company L.L.C.

Sex: O

Organization Type: Casco Industries Inc.


**DAMAGES:**
Compensatory Past Medical: $1,500,000

Total Compensatory Award: $1,500,000

Comparative Negligence Percentage: 37


**FACTS:**
Damien Wesby, a 37-year-old male firefighter, claimed he suffered third degree burns and scarring to his back, shoulders and arms and psychological injuries when he and his company responded to a house fire, he was wearing a turn-out jacket manufactured by defendant Globe Manufacturing Company L.L.C. and sold to the fire department by defendant Casco Industries Inc., he was designated as the lead hose man to enter the fire, and he began to feel his skin burning underneath his jacket within seconds after entering the fire. He asserted the fire department had provided Casco with his full measurements but Casco only communicated his chest size and jacket length to Globe. The plaintiff contended the defendants were strictly liable and negligent. He claimed Globe manufactured the jacket in a defective condition in that the jacket allowed convective hot air gases to enter between his skin and the jacket, failed to warn, negligently misrepresented the jacket could protect him from convective heat burns, and failed to properly inspect and test the jacket. The plaintiff contended Casco distributed the jacket in a defective condition, failed to warn, misrepresented the jacket could protect him from convective heat burns, and failed to provide proper sizing information. The defendants denied liability and contended the jacket was manufactured to the specifications ordered. They claimed the plaintiff confirmed the fit of the jacket prior to the fire, and they received no complaints as to the jacket's

**WESBY v. GLOBE MANUFACTURING COMPANY L.L.C.;..., JVR No. 2005210032...**

fit until after the fire. A jury determined the plaintiff was 37.5 percent at fault and Casco was 62.5 percent at fault, and the jury awarded the plaintiff $1,500,000 for past and future medical expenses. The court reduced the award to $937,500 per fault apportionment.

**Jury Verdict Research**
**COURT: USDC**

**End of Document**                                          © 2021 Thomson Reuters. No claim to original U.S. Government Works.

JVR No. 1701050025, 2016 WL 8118790 (E.D.Ark.) (Verdict and Settlement Summary)

Copyright (c) 2019 Thomson Reuters/West
United States District Court, E.D. Arkansas.

# PRINCE v. SOUTHERN SNOW MANUFACTURING INC.

4:14CV00031

DATE OF INCIDENT: June 06, 2013
DATE OF FILING: January 17, 2014
DATE OF TRIAL/SETTLEMENT: November 16, 2016

TOPIC:

LIABILITY:

General: Products Liability

Specific: Granulator

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $150,000**
**Judge Reduced Award To: $78,000**

**Related Court Documents:**
Plaintiff's complaint: 2014 WL 229825

Defendant's brief in support of motion to dismiss: 2014 WL 2880014

Judgment: 2016 WL 7047820

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff:
Conrad T. Odom, Odom Law Firm P.A., Fayetteville, AR
Tim Cullen, Cullen & Company, Little Rock, AR
Defendant:
Mark Edward Andrews, Andrews Arts & Sciences Law L.L.C., New Orleans, LA

JUDGE: D.P. Marshall Jr.

RANGE AMOUNT: $100,000 - 199,999
STATE: Arkansas
COUNTY: Not Applicable

**PRIMARY INJURY: Amputation: Finger**

**SUMMARY**

PRINCE v. SOUTHERN SNOW MANUFACTURING INC., JVR No. 1701050025 (2016)

---

**PLAINTIFF:**
Sex: F

Age: Adult

General Occupation: Food Service Worker


**DEFENDANT:**
Sex: O

Organization Type: Southern Snow Manufacturing Inc.


**DAMAGES:**
Compensatory Pain & Suffering: $150,000

Total Compensatory Award: $150,000

Comparative Negligence Percentage: 48


**FACTS:**
Samantha Prince, a clerk at a mobile snow cone stand, allegedly suffered the partial amputation of three fingers on her right hand, with no reattachment possible, while she was cleaning a machine with rotating blades, used to shave block-ice, manufactured and sold by defendant Southern Snow Manufacturing Inc. Prince contended the defendant was negligent under a strict liability theory for allowing defects which caused ice to become caked in the machine's chute, which required manual cleaning; failing to design the machine with appropriate safety guards, failing to design safety features in the on/off switch to prevent users from starting the machine while cleaning it, and failing to provide adequate safety instructions and warnings. Damages were disputed. The defendant reportedly was found 52 percent at fault and the $150,000 award was reduced, accordingly, by the court in judgment.


Jury Verdict Research
COURT: USDC

---

End of Document         © 2021 Thomson Reuters. No claim to original U.S. Government Works.

---

JVR No. 1103150060, 2010 WL 6774051 (E.D.Ark.) (Verdict and Settlement Summary)

Copyright (c) 2019 Thomson Reuters/West
United States District Court, E.D. Arkansas.

# POLSTON v. FORD MOTOR CO. INC.

3:08-cv-00206-DPM

DATE OF INCIDENT: December 27, 2005
DATE OF FILING: December 23, 2008
DATE OF TRIAL: October 15, 2010

TOPIC:

LIABILITY:

General: Products Liability

Specific: Seat Belt

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total Verdict: $19,000,000**
**Judge Reduced Award To:**
HIGH AMOUNT: $0

LOW AMOUNT: $0

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: Nolan E. Awbrey, Birmingham, AL
Defendant: Edwin L. Lowther Jr., Little Rock, AR

JUDGE: D. P. Marshall Jr.

RANGE AMOUNT: $5,000,000 - 999,999,999
STATE: Arkansas
COUNTY: Not Applicable

**PRIMARY INJURY: Quadriplegia**
Cervical Vertebra Fracture

General Emotional Distress: Quality of Life Loss

**SUMMARY**
**PLAINTIFF:**
Sex: Male

**POLSTON v. FORD MOTOR CO. INC., JVR No. 1103150060 (2010)**

Age: Adult

**DECEDENT:**
**DEFENDANT:**
Sex: Organization

Inactive Defendant (for organization): Ford Motor Co. Inc.

Policy Limit:

Other Expenses: $0

**DAMAGES:**
Compensatory Past Medical Award: $0

Compensatory Future Medical Award: $0

Compensatory Past Wages Award: $0

Compensatory Future Wages Award: $0

Compensatory Pain And Suffering Award: $19,000,000

Other Compensatory Award: $0

Total Compensatory Award: $19,000,000

Punitive Damages: $0

Hedonic Damages: $0

Property Damages: $0

Other Damages: $0

Interest: $0

Comparative Negligence Percentage: 0

**FACTS:**
A male alleged that he suffered a vertebra fracture at C6-7 that required surgery and resulted in tetraplegia and the quality of life loss when he was ejected from his van, manufactured by the defendant, after his seatbelt mechanism malfunctioned as the van overturned on a city street. The plaintiff contended that the defendant failed to properly manufacture the van, failed to properly test the seat belt mechanism to ensure that it was safe for its intended use and purpose, and failed to warn of the known dangerous condition. The defendant denied liability.

POLSTON v. FORD MOTOR CO. INC., JVR No. 1103150060 (2010)

Jury Verdict Research
COURT: USDC

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

JVR No. 506826, 2009 WL 4878205 (E.D.Ark.) (Verdict and Settlement Summary)

Copyright (c) 2019 Thomson Reuters/West

**United States District Court, E.D. Arkansas.**

# BOHANNON v. JOHNSON FOOD EQUIPMENT INC.

5:07-cv-00123

DATE OF INCIDENT: July, 2004
DATE OF FILING: May, 2007
DATE OF TRIAL: April, 2009

TOPIC:

LIABILITY:

General: PRODUCTS LIABILITY

Specific: Industrial Machine

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Non Verdict Award: $**
**Total Verdict: $4,500,000**
**Judge Reduced Award To: $**
**Claimed Past Medical: $95,000**
**Claimed Future Medical: $**
**Claimed Past Wage Expense: $25,000**
**Claimed Future Wage Expense: $490,000**
Plaintiff's Economist: $

Defendant's Economist: $

**EXPERT-WITNESSES:**
**ATTORNEY:**
**Plaintiff: Edward T. Oglesby, Little Rock, AR**
Defendant: J. Andrew Vines, Little Rock, AR
Gordon S. Rather Jr., Little Rock, AR

JUDGE: James M. Moody

RANGE AMOUNT: $2,000,000 - 4,999,999
STATE: Arkansas
COUNTY: Not Applicable

**PRIMARY INJURY: Hand Amputation**

**SUMMARY**

BOHANNON v. JOHNSON FOOD EQUIPMENT INC., JVR No. 506826 (2009)

**PLAINTIFF:**
Sex: Female

Age: 29


**DECEDENT:**
Funeral Expense: $

Other Expenses: $


**DEFENDANT:**
Type: Single Organization

Sex: Organization

Policy Limit: $


**DAMAGES:**
Past Medical: $

Future Medical: $

Past Wage: $

Future Wage: $

Pain and Suffering: $3,280,000

Other: $1,220,000

Total: $4,500,000

Punitive: $

Hedonic: $

Property: $

Other: $

Interest: $

Loss of Services: $


**COMPARATIVE NEGLIGENCE PERCENTAGE: 10%**

**FACTS:**

**BOHANNON v. JOHNSON FOOD EQUIPMENT INC., JVR No. 506826 (2009)**

A 29-year-old female alleged that she suffered right hand degloving, that required the amputation of her thumb, a partial hand amputation, and post-traumatic stress disorder when her glove got caught in a machine, designed and manufactured by the defendant, as she attempted to clean the machine, in the course and scope of her employment with a nonparty. The plaintiff contended that the defendant failed to properly design and manufacture its machines, failed to place warnings on the machine to prevent injury, and that it failed to ensure that its products were safe for their intended use and purpose. The defendant denied liability and contended that the plaintiff's nonparty employer failed to properly train and supervise its employees. The jury apportioned negligence at 60 percent to the plaintiff's nonparty employer, 30 percent to the defendant, and 10 percent to the plaintiff, and her award was adjusted accordingly. Subsequently, the court set the entire verdict aside, and granted a new trial.


Jury Verdict Research
COURT:

---

**End of Document**                                      © 2021 Thomson Reuters. No claim to original U.S. Government Works.

---

JVR No. 484927, 2008 WL 2128168 (Unknown State Ct. (Ark.)) (Verdict and Settlement Summary)

Copyright (c) 2019 Thomson Reuters/West
United States District Court, E.D. Arkansas.

# SCROGGIN v. WYETH PHARMACEUTICALS; UPJOHN CO.

04-1169

DATE OF TRIAL: February, 2008

TOPIC:

LIABILITY:

General: PRODUCTS LIABILITY

Specific: Prescription

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Non Verdict Award: $**
**Total Verdict: $29,750,000**
**Judge Reduced Award To: $**
**Claimed Past Medical: $**
**Claimed Future Medical: $**
**Claimed Past Wage Expense: $**
**Claimed Future Wage Expense: $**
Plaintiff's Economist: $

Defendant's Economist: $

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: James A. Morris Jr., Austin, TX
Defendant: Lyn P. Pruitt, Little rock, AR

JUDGE: William R. Wilson Jr.

RANGE AMOUNT: $5,000,000 - 999,999,999
STATE: Arkansas
COUNTY: Not Applicable

**PRIMARY INJURY: Breast Cancer**

**SUMMARY**
**PLAINTIFF:**
Sex: Female

Age: An adult of undetermined age.


**DECEDENT:**

Funeral Expense: $

Other Expenses: $


**DEFENDANT:**

Type: Multiple Organizations

Sex: Organization

Policy Limit: $


**DAMAGES:**

Past Medical: $

Future Medical: $

Past Wage: $

Future Wage: $

Pain and Suffering: $2,750,000

Other: $

Total: $2,750,000

Punitive: $27,000,000

Hedonic: $

Property: $

Other: $

Interest: $

Loss of Services: $


**FACTS:**

A female alleged that she suffered breast cancer after she ingested hormone replacement medication, manufactured by the defendant and codefendant pharmaceutical companies, for a prolonged period of time. The plaintiff contended that the defendants failed to warn her of the risks associated with their product, failed to inform her that it increases the chances of

**SCROGGIN v. WYETH PHARMACEUTICALS; UPJOHN CO., JVR No. 484927 (2008)**

contracting breast cancer, and failed to ensure that the medications were safe for their intended use and purpose. The defendants denied liability. The plaintiff's award included $27 million dollars in punitive damages.

Jury Verdict Research
COURT:

**End of Document**                                © 2021 Thomson Reuters. No claim to original U.S. Government Works.

JVR No. 489217, 2001 WL 36161832 (E.D.Ark.) (Verdict and Settlement Summary)

Copyright (c) 2019 Thomson Reuters/West
United States District Court, E.D. Arkansas.

# BARNETT v. GX MARKETING INC.; SK LABORATORIES

4-03-CV-00482JMMM

**DATE OF INCIDENT: August, 2001**

TOPIC:

LIABILITY:

General: PRODUCTS LIABILITY

Specific: Weight Loss Products

**SUMMARY**
**Outcome: Settlement**
**Non Verdict Award: $375,000**
**Total Verdict:**
**Judge Reduced Award To:**
**Claimed Past Medical: $5000**
**Claimed Future Medical:**
**Claimed Past Wage Expense:**
**Claimed Future Wage Expense:**
Plaintiff's Economist:

Defendant's Economist:

**EXPERT-WITNESSES:**
: Gurley, William, M.D., Little Rock, AR
Neurologist: Oberlander, David, M.D., Conway, AR
**ATTORNEY:**
Plaintiff: David S. Mitchell, Little Rock, AR

JUDGE:

RANGE AMOUNT: $200,000 - 499,999
STATE: Arkansas
COUNTY: Not Applicable

**PRIMARY INJURY: Mild Brain Injury**

**SUMMARY**
**SETTLEMENT TIME: After Filing**
**PLAINTIFF:**

BARNETT v. GX MARKETING INC.; SK LABORATORIES, JVR No. 489217 (2001)

Sex: Female

Age: 24


**DECEDENT:**
Funeral Expense:

Other Expenses:


**DEFENDANT:**
Type: Multiple Organizations

Sex: Organization

Policy Limit:


**DAMAGES:**
Past Medical:

Future Medical:

Past Wage:

Future Wage:

Pain and Suffering:

Other: $375,000

Total: $375,000

Punitive:

Hedonic:

Property:

Other:

Interest:

Loss of Services:


**FACTS:**
A 24-year-old female alleged that she suffered a mild brain injury, temporary memory loss, and a seizure shortly after ingesting
a FASTRAK tablet of weight loss medication, manufactured by the codefendant and distributed by the defendant. The plaintiff

**BARNETT v. GX MARKETING INC.; SK LABORATORIES, JVR No. 489217 (2001)**

---

contended that the defendants manufactured and sold a product that was unsafe for human consumption, failed to properly test the product before distribution, failed to warn of the risks associated with the medication, and failed to prevent injury to consumers. The defendants denied liability and disputed the extent of the plaintiff's injuries but agreed to settle.

Jury Verdict Research
COURT:

---

**End of Document**                                © 2021 Thomson Reuters. No claim to original U.S. Government Works.

JVR No. 436195, 2003 WL 24903923 (Unknown State Ct. (Ark.)) (Verdict and Settlement Summary)

Copyright (c) 2019 Thomson Reuters/West
Unknown Arkansas State Ct.

# HALL, PRO AMI v. E-TON DYNAMICS INDUSTRIAL CORP.

CA-02-1311

DATE OF INCIDENT: September, 1999
DATE OF TRIAL: September, 2003

TOPIC:

LIABILITY:

General: PRODUCTS LIABILITY

Specific: ATV

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Non Verdict Award:**
**Total Verdict: $200,000**
**Judge Reduced Award To:**
**Claimed Past Medical: $20,000**
**Claimed Future Medical:**
**Claimed Past Wage Expense:**
**Claimed Future Wage Expense:**
Plaintiff's Economist:

Defendant's Economist:

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: Troy Henry, Jonesboro, AR
Defendant: Scott A. Irby, Little Rock, AR

RANGE AMOUNT: $200,000 - 499,999
STATE: Arkansas
COUNTY: Greene

**PRIMARY INJURY: Toe Amputation**

**SUMMARY**
**PLAINTIFF:**
Sex: Female

Age: 3

**DECEDENT:**
Funeral Expense:

Other Expenses:

**DEFENDANT:**
Type: Single Organization

Sex: Organization

Occupational Field: MANUFACTURING-TRANSPORTATION PRODUCTS

Policy Limit:

**DAMAGES:**
Past Medical:

Future Medical:

Past Wage:

Future Wage:

Pain and Suffering: $100,000

Other:

Total: $100,000

Punitive:

Hedonic:

Property:

Other:

Interest:

Loss of Services: $100,000

Loss of Services By: Parent / Guardian

**FACTS:**

HALL, PRO AMI v. E-TON DYNAMICS INDUSTRIAL CORP., JVR No. 436195 (2003)

A 3-year-old female suffered the amputation of two toes on her right foot while riding with her father on an all terrain vehicle manufactured by the defendant. The incident occurred while the father was driving up his driveway with the plaintiff sitting in front of him, barefoot. The plaintiff contended that the defendant negligently designed, manufactured and sold the vehicle in a defective condition and failed to ensure the product was safe for its intended use and purpose. The defendant denied liability and contended that the plaintiff's father had altered the vehicle, exchanging parts with another vehicle, and that the vehicle was not suitable for children under the age of 12 to be on.

Jury Verdict Research
COURT:

**End of Document** <span style="float:right">© 2021 Thomson Reuters. No claim to original U.S. Government Works.</span>

# Exhibit C

I MOCR 4-4, 1996 WL 33405018 (Mo.Cir.) (Verdict and Settlement Summary)

Copyright (C) 2019 Verdict Reporter, Inc.
Circuit Court of Missouri, Jackson County.

# MARK BOWMAN, BRITT BOWMAN v. LEER, INC., TRUCK ACCESSORY GROUP, INC., AMA TRUCK TOPPERS, CREATION WINDOWS OF INDIANA, SUSPA, INC.

Cause # CV95-15285

DATE OF VERDICT/SETTLEMENT: September 23, 1996

TOPIC: Product Liability

**SUMMARY:**

Settlement: Reached September 23, 1996 for $425,000 ($375,000 from Leer + $50,000 from AMA Truck).

**EXPERT WITNESSES:**

Plaintiff: Vaughn Adams, Mechanical & Forensic Engineer, from Tempe, Arizona, by deposition; John Ward, Economist, from Kansas City, MO, by deposition.

Defendant: none

**ATTORNEYS:**

Plaintiff: Brett Milbourn, P.O. Box 26188, Kansas City, MO 64196, phone #(816) 421-6620 (Walters, Bender & Strohbehn).

Defendant: Douglas Richmond & Martin Rosemann, 2345 Grand Blvd., Suite 2000, Kansas City, MO 64108, phone #(816) 221-3420 (Armstrong, Teasdale) [Leer, Inc. & Truck Accessory Group]; John Huff, 4600 Madison Ave., Suite 210, Overland Park, KS 64112-3012, phone #(816) 561-5580 (Field, Gentry & Benjamin, P.C) [AMA Truck Toppers]; Paul Feuerborn, 2600 Grand Ave., Kansas City, MO 64108-4606, phone #(816) 691-2600 (Morrison & Hecker) [Creation Windows]; Jack Bangert, P.O. Box 26530 (1100 Main St., Suite 2950), Kansas City, MO 64196-6530, phone #(816) 471-6900 (Sherman, Taff & Bangert, P.C.) [Suspa, Inc.].

JUDGE: Hon. Jay Daugherty

RANGE AMOUNT: $200,000-499,999

STATE: Missouri

COUNTY: Jackson

**INJURY:**

Injuries Alleged: permanent loss of vision in right eye; medical specials: about $43,500 past + $25,000 future; wage loss: about $5,000 past + $463,000 future.

**SUMMARY:**

The following information is from Milbourn, Bangert & Huff; the other attorneys were unavailable for comment.

Type of Claim: defective design of door to pickup truck cap; plaintiff, 35 years old at the time, alleged that in July 1992, he ordered a deluxe commercial truck cap for the 8' bed of his Chevrolet pick-up truck. In August, the truck cap was received, mounted and delivered to plaintiff's truck by AMA Truck Toppers. In October 1994, while unloading boards from the back of the truck, plaintiff was walking towards his vehicle to remove the last item from the truck when his face struck the pointed and unguarded aluminum corner of the rear door, which was at eye level, completely ripping out his right eye causing permanently

blindness in his right eye. Plaintiff alleged that from the day he picked up the truck cap, the rear trapezoid entry door raised only 90 degrees or to eye level, rather than extending to its full upright position of about 130 degrees, as it was designed and intended to raise. Plaintiff claimed the truck cap was thereby defective its design and manufacture. Further, plaintiff contended that defendants failed to warn of the product's sharp and unguarded aluminum corners and failed to inform the consumer that the door was supposed to raise above the user's head. Plaintiff claimed the sharp corners should have been either rounded or guarded. Also, plaintiff alleged the gas props were inadequately sized to properly raise the door as designed.

Defendants denied plaintiff's allegations and claimed the condition was "open and obvious", therefore they had no duty to warn of any defect. Defendant Leer manufactured the truck cap and designed the rear entry door; Truck Accessory Group is a successor owner of Leer. Defendant Suspa, Inc. manufactured the gas prop device. Suspa and Creation Windows settled with plaintiff for a confidential amount. These defendants contended they had no part in the design and manufacture of the door itself and after testing the gas props, it was shown they still met their pre-installation specifications. Prior to the scheduled mediation, the remaining defendants' motion for partial summary judgment was denied, and as a result of mediation, the parties settled.

SOURCE: Verdict Reporter, Inc.
Jackson County

PUBLISHED IN: Missouri Civil Reports

---

**End of Document**       © 2021 Thomson Reuters. No claim to original U.S. Government Works.

IX JVRS 37-2, 1992 WL 12005713 (Mo.Cir.)

Copyright (C) 2019 Verdict Reporter, Inc.
Circuit Court of Missouri, St. Louis City.

# ROGER C. WEST v. MILWAUKEE ELECTRIC TOOL CORP.

Cause # 892-05566

DATE OF VERDICT/SETTLEMENT: December 4, 1992

TOPIC: Product Liability

**SUMMARY:**

Verdict: Returned Dec. 4, 1992, for plaintiff $350,000 (plaintiff's attorney noted fault was not an issue in this case in that the cause of action accrued before the implementation of Missouri Tort Reform applicable to product liability actions); defendant's motion for JNOV and new trial were denied; parties settled while appeal was pending, figure confidential.

**EXPERT WITNESSES:**

Plaintiff: Dr. W. Howard Lewin, Ophthalmologist, expert, from St. Louis, MO, by video deposition; Keith Vidal, Mechanical Engineer, from St. Louis, MO, live.

Defendant: John C. Myers, Senior Product Engineer for Milwaukee Electric Tool Corp., from Brookfield, WI, live; John Sharp, Industrial Testing Laboratories, Inc., from St. Louis, MO live; Robert Bartlett, Engineer, from Juno Beach, FL, by deposition; John L. Bennett, retired Black & Decker engineer, from Towson, Maryland, live.

**ATTORNEYS:**

Plaintiff: Robert W. Bosslet, 720 Olive, Suite 2150, St. Louis, MO 63101, phone #(314) 231-1131 (Morris B. Chapman & Associates); Russell C. Still, 311 N. 10th St., P. O. Box 933, Columbia, MO 65205, phone #(314) 874-2402 (Harlan, Harlan & Still).

Defendant: Kenneth Bean and Andrew Dillon, One City Centre, Suite 1500, St. Louis, MO 63101-1804, phone #(314) 231-3332 (Sandberg, Phoenix & vonGontard).

JUDGE: Hon. Thomas O'Shea

RANGE AMOUNT: $200,000-499,999
STATE: Missouri
COUNTY: St. Louis City

**INJURY:**

Damages Alleged: loss of vision in left eye; medical specials: $11,677.94; wage loss: none.

**SUMMARY:**

Type of Claim: defective design of allen wrench holder; retrial, was a hung jury on July 31, 1992; plaintiff, about 30 years old at the time, alleged while he was operating an electric Milwaukee Sawzall in his employment, the allen wrench ejected from the 7.85" neoprene rubber holder and the wrench struck plaintiff in the eye. Plaintiff claimed the design of the holder was defective and was unreasonably dangerous.

Defendant denied the design was either defect or was unreasonably dangerous when put to a reasonably anticipated use; plaintiff had dragged the power tool along the floor and a strap allegedly caught on a piece of lumber. Further, defendant disputed that

**ROGER C. WEST v. MILWAUKEE ELECTRIC TOOL CORP., IX JVRS 37-2 (1992)**

the ejection from the rubber allen wrench holder could have occurred as described by plaintiff. Defendant contended there had been no other similar accident and there was widespread use of this type of tool.

Last Demand: $185,000 before and during trial, according to plaintiff's attorney; $100,000 before trial, according to defendant's attorney.

Last Offer: none, according to plaintiff's attorney; $25,000 before trial, according to defendant's attorney.

SOURCE: Verdict Reporter, Inc.
St. Louis City
Division # 12

PUBLISHED IN: Jury Verdict Reporting Service

End of Document    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Bailes v. Toro Co., 1988 WL 509079 (1890)

---

1988 WL 509079 (Unknown State Ct.) (Verdict and Settlement Summary)

Copyright (C) 2019 by Association of Trial Lawyers of America

District Court of Minnesota, Fourth Judicial District, Hennepin County.

# BAILES v. TORO CO.

No. 84-12534

No Date Given

TOPIC: PRODUCTS LIABILITY

**SUMMARY:**
Verdict: $2,300,000

**ATTORNEY(S):**
Plaintiff(s): Cartwright, Robert E: San Francisco

RANGE AMOUNT: $2,000,000-4,999,999
STATE: Minnesota
COUNTY: Hennepin

TYPE OF INJURY: EYE INJURIES : loss of vision in one eye.

**SUMMARY:**
**Plaintiff Information:**
Sex: Male

Age: 18 Years

**FACTS:**
Overview: 18 year old male, nerve deaf and dumb since birth, lost the vision in one eye when it was struck by a stone thrown from a power motor operated in the yard next door to where he was standing. He alleged defective design and assembly as well as improper instructions an warnings.

Association of Trial Lawyers of America
Minnesota, Hennepin County, No. 84-12534, (2-3-88)

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

**JVR No. 3110, 1987 WL 230394 (Unknown State Ct. (Iowa)) (Verdict and Settlement Summary)**

Copyright (c) 2019 Thomson Reuters/West
**Unknown Iowa State Ct.**

## CRIST v. QUAKER OATS COMPANY, FISHER-PRICE DIVISION

C85-85

**DATE OF INCIDENT: September, 1984**
**DATE OF TRIAL: February, 1987**

TOPIC:

LIABILITY:

General: PRODUCTS LIABILITY

Specific: Toy

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Non Verdict Award: $110,000**
**Total Verdict: $110,000**
**Final Demand: $100,000**
**Final Offer: $15,000**
**Claimed Past Medical: $12,000**
**Claimed Future Medical: $5000**

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: Lane & Waterman by Rand Wonio, Davenport, IA.
Defendant: Shuttleworth & Ingersoll by Patrick M. Roby, Cedar Rapids, IA.

RANGE AMOUNT: $100,000-199,999
STATE: Iowa
COUNTY: Not Available

**PRIMARY INJURY: Eye Laceration**

**SUMMARY**
**PLAINTIFF:**
Sex: Female

Age: 2

**DECEDENT:**
**DEFENDANT:**
**DAMAGES:**
Other: $110,000

CRIST v. QUAKER OATS COMPANY, FISHER-PRICE DIVISION, JVR No. 3110 (1987)

Total: $110,000

**FACTS:**
A two-year-old female suffered an eye injury when a toy that she was playing with broke, exposing a spike-shaped metal wheel axle. The child fell backward while holding the toy and the spike lacerated her eye. The plaintiff did not suffer any loss of vision but contended that she would probably require cataract surgery in the future. The plaintiff brought suit against the toy manufacturer alleging that the toy was not safe. The defendant contended that the toy was old and had been misused. The jury found the plaintiff's parents 33 percent negligent in the accident. Past Medical: $12,000. Future Medical: $5,000. Demand: $100,000. Offer: $15,000.

Jury Verdict Research
COURT:

End of Document                                                     © 2021 Thomson Reuters. No claim to original U.S. Government Works.

JVR No. 21785, 1985 WL 352114 (Unknown State Ct. (Mo.)) (Verdict and Settlement Summary)

Copyright (c) 2019 Thomson Reuters/West
**Unknown Missouri State Ct.**

# WOODFORD v. GENERAL MOTORS AND BEN HICKS CHEVROLET

CV-83-7527

**DATE OF TRIAL: July, 1985**

TOPIC:

LIABILITY:

General: PRODUCTS LIABILITY

Specific: New truck battery exploded

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Non Verdict Award: $500,000**
**Total Verdict: $500,000**

**EXPERT-WITNESSES:**
**ATTORNEY:**

RANGE AMOUNT: $500,000-999,999
STATE: Missouri
COUNTY: Jackson

**PRIMARY INJURY: Blindness in One Eye**

**SUMMARY**
**PLAINTIFF:**
Sex: Male

**DECEDENT:**
**DEFENDANT:**
**DAMAGES:**
Other: $500,000

Total: $500,000

**FACTS:**
A plaintiff suffered the loss of vision in one eye and lacerations of the other eye when a truck battery exploded. The plaintiff contended that while he was checking the battery's water level it exploded. He contended that the defendant manufacturer of the battery and the truck seller were strictly liable. Demand: $500,000. Offer: $15,000 (manufacturer only). Plaintiff Attorney: Allan J. Fanning. Defense Attorneys: Thomas O. Baker (manufacturer) and John L. Moran (car dealer).

Jury Verdict Research
COURT:

**End of Document**                                                © 2021 Thomson Reuters. No claim to original U.S. Government Works.

JVR No. 37224, 1983 WL 248295 (Neb.Dist.Ct.) (Verdict and Settlement Summary)

Copyright (c) 2019 Thomson Reuters/West
District Court of Nebraska, Third Judicial District, Lancaster County.

# FOSTER v. REMINGTON ARMS CO.

342 PAGE 77

DATE OF INCIDENT: May, 1979
DATE OF TRIAL: September, 1983

TOPIC:

LIABILITY:

General: PRODUCTS LIABILITY

Specific: Skeet target

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Non Verdict Award: $302,000**
**Total Verdict: $302,000**

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: M.J. Bruckner, Lincoln, NE.
Defendant: Louis Michael Thrasher, Lincoln, NE.

JUDGE:

RANGE AMOUNT: $200,000-499,999
STATE: Nebraska
COUNTY: Lancaster

**PRIMARY INJURY: Blindness in One Eye**

**SUMMARY**
**PLAINTIFF:**
Sex: Male

Age: 32

**DECEDENT:**
**DEFENDANT:**
**DAMAGES:**
Other: $302,000

Total: $302,000

**FOSTER v. REMINGTON ARMS CO., JVR No. 37224 (1983)**

**FACTS:**

A 32-year-old salesman suffered 90% vision loss of the right eye when a clay skeet target manufactured by the defendant exploded prematurely. The plaintiff contended that the defendant failed to provide adequate warnings regarding the propensity of the targets to prematurely shatter. Past Medical: $2,871. Past Wages: $550. Demand: $75,000. Offer: None.

Jury Verdict Research
COURT: District(State Court)

End of Document                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.